UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

ELAINE M. GUSTAFSON,                                   Civil No. 10-4962 (DSD/LIB)

        Plaintiff,

v.                                                                              **REPORT AND**
                                                                             **RECOMMENDATION**
MICHAEL J. ASTRUE, COMMISSIONER
OF SOCIAL SECURITY,

        Defendant.

---

      Plaintiff Elaine Gustafson seeks judicial review of the decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB"). The matter was referred to the undersigned United States Magistrate Judge for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. This Court has jurisdiction over the claims pursuant to 42 U.S.C. §§ 405(g) and 1283(c). Both parties submitted motions for summary judgment. For the reasons set forth below, the Court recommends that Plaintiff's motion for summary judgment be DENIED and the Defendant's motion for summary judgment be GRANTED.

## I.    BACKGROUND

###     A.    Procedural History

      On July 12, 2007, Plaintiff filed an application for DIB Supplemental Security Income ("SSI"). (Tr. 9)[1]. Plaintiff alleged that she became disabled on May 15, 2006. (Tr. 9). The Commissioner denied Plaintiff's claims on November 8, 2007. (Tr. 71). Plaintiff filed a Request

---

[1] Throughout this Report and Recommendation, this Court refers to the administrative record [Docket No. 7] for the present case by the abbreviation "Tr."

for Reconsideration, which the Commissioner also denied on June 2, 2008. (Tr. 77). Subsequently, Plaintiff filed a written request for a hearing. (Tr. 81). Pursuant to Plaintiff's request for a hearing, Administrative Law Judge ("ALJ") George Gaffaney conducted a hearing on September 22, 2009. (Tr. 9, 22). At the hearing, Plaintiff and Mitchell Norman, Vocational Expert ("VE"), testified. (Tr. 22-52). After the hearing, on February 8, 2010, the ALJ issued a decision denying Plaintiff's request for benefits. (Tr. 6-19). The ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 15-22). Plaintiff sought review of the decision by the Appeals Council. (Tr. 53). However, the Appeals Council denied Plaintiff's request for review. (Tr. 1). As such, the ALJ's decision became the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481.

B.   **Factual History**

Plaintiff was born on May 6, 1961. (Tr. 179). She weighs 258 pounds and is 5 ft 6 inches tall. (Tr. 27). Plaintiff lives with her husband. Id. Plaintiff previously worked as a cook/server at a college from 1993 to October of 1995. (Tr. 24). Plaintiff worked until May 15, 2006 as a case aide for Scott County. Id. At the time of the hearing, Plaintiff worked sporadically at the Southern Hills Golf Course around 2-6 hours over a two week period. (Tr. 27-28). However, Plaintiff often works for three to four hours and then has to leave because she is tired out, sore and has burning in her legs. (Tr. 28). On a good day, she can work six hours. Id. Some days Plaintiffs is unable to go to work even when her employer wants her to come in. Id. Plaintiff testified this happens twice per month. (Tr. 28-29).

Plaintiff testified that she can only sit for an hour because she gets a painful locked hip. (Tr. 30). Her back also hurts after sitting for an hour. Id. At this point, she needs to move around for 15 to 20 minutes before she can sit down again. Id. Plaintiff further testified that she

can walk for a block before its painful. (Tr. 33). At that time, her legs tire and burn. Id. Then, she has to stop and rest for 15 to 20 minutes. Id. In addition, Plaintiff stated that her hand hurts after signing her name three or four times. (Tr. 34). Plaintiff cannot use her arms repetitively because it hurts across her collarbone. Id. She can lift two pounds with her right hand and five pounds with her left hand. (Tr. 35). Plaintiff complains of difficulty typing because of gloves she wears for lymphedema and tingling in her hands. (Tr. 35). Moreover, Plaintiff states that she has problems with her memory due to her medication. (Tr. 43). She forgets things people tell her and loses important items. Id.

Plaintiff prepares meals, does some cleaning, and drives. (Tr. 41). However, she cannot peel potatoes or pound on meat. Id. She does the dishes and laundry. Id. She keeps in touch with family and friends. Id. She serves as the clerk for her church and goes to bible study. (Tr. 45). She does crafts and volunteered for Wisconsin disaster relief. (Tr. 807). However, her mother reported that she has difficulty removing shirts due to arm pain, washing and combing her hair, and using toilet tissue. (Tr. 151).

### C. Evidence from the Vocational Expert

In addition, a vocational expert ("VE"), Mitch Norman, testified at the administrative hearing. (Tr. 46). The ALJ asked the VE to consider what jobs a person could perform who was 48 with two years of postsecondary education who would be limited to lifting 20 pounds occasionally, and ten frequently, could stand and sit six hours in an eight-hour workday with walking limited to one block at a time and occasional stair-climbing, balancing, stooping, kneeling, crouching, crawling, overhead reaching, and exposure to hazards. (Tr. 48). Further limitations included simple routine tasks and occasional interaction with the public. (Tr. 48). In response to this question, the VE testified that the Plaintiff could not perform her past relevant

work. (Tr. 49). However, the VE additionally testified that the Plaintiff could perform other jobs in the economy such as a mail clerk and bench assembler. Id.

Plaintiff's attorney asked the VE if his response would change if this hypothetical were further limited so that the individual could not use upper extremities or operate foot pedals on a repetitive basis and could only occasionally use foot pedals and the upper extremities. (Tr. 49). The VE stated that such an individual would no longer be able to perform the stated jobs. Id. Likewise, Plaintiff's attorney limited the hypothetical to be applicable to someone who cannot maintain attention and concentration to perform routine, repetitive tasks. Id. The VE responded that such a limitation would eliminate competitive employment. Id.

Additionally, the ALJ posited a second hypothetical to the VE by asking what jobs a person with the same above characteristics could perform if she was further limited to lifting ten pounds occasionally and five pounds frequently, standing limited to two hours a day, and sitting limited to six hours a day. Id. The VE responded that the Plaintiff could perform the job of bonding machine operator and order clerk. (Tr. 49). Both are sedentary, unskilled work. Id.

The ALJ provided a third hypothetical with the additional limitation that the person could not work a full eight hour workday. (Tr. 49). The VE testified that in such a situation, the Plaintiff could not perform full-time work. Id.

### D. The ALJ's Decision

The ALJ determined Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 19). In reaching his decision, the ALJ purported to apply the required five-step sequential analysis: (1) whether the claimant had engaged in substantial gainful activity; (2) whether the claimant had a severe impairment; (3) whether the claimant's impairment met or equaled a listed impairment; (4) whether the claimant had sufficient RFC to return to their past

work; and (5) whether the claimant could do other work existing in significant numbers in the regional or national economy.  20 C.F.R. § 404.1520(a)-(f).

At step one of the analysis, the ALJ found that Plaintiff had not engaged in substantial work since May 15, 2006, the alleged onset date.  (Tr. 11).  Turning to step two of the analysis, the ALJ determined that Plaintiff suffered severe impairments including right breast cancer status post mastectomy, diabetes mellutis with neuropathy, cellutitis, bilateral shoulder pain, attention deficit hyperactivity disorder ("ADHD"), mood disorder with depression and anxiety, and obesity.  (Tr. 11).

Next, at step three, the ALJ concluded that Plaintiff's impairment or combination of impairments did not meet or equal one of the listed impairments in 20 C.F.R., part 404, subpart P, appendix 1.  (Tr. 12).  At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with the frequent lifting of five pounds and occasional lifting of ten pounds, standing two hours out of an eight hour workday, sitting six hours out of an eight hour work day, except no climbing of ladders, only occasional climbing of stairs, balancing, stooping, kneeling, crouching crawling, exposure to hazards, occasional bilateral reaching, limited to walking one black at a time with occasional interaction with the public, occasional changes in routine work setting, performing simple, routine, and repetitive tasks.  (Tr. 14).

In analyzing Plaintiff's RFC, the ALJ considered all of Plaintiff's claimed symptoms and whether they were consistent with the objective medical evidence and other evidence consistent with 20 C.F.R. 404.1529 and 404.1527.  (Tr. 14).  The ALJ considered whether the Plaintiff's underlying physical or mental impairments could reasonably be expected to produce the claimant's pain or other symptoms. (Tr. 14).  In making this determination, the ALJ evaluated

5

the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities.  Upon this examination, the ALJ found that the medical records fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled.  (Tr. 15).  The ALJ noted that her physical examinations have been normal.  (Tr. 15).  Moreover, an MRI showed only mild degenerative changes of the cervical spine.  (Tr. 15).  A previous examination of the Plaintiff's shoulder resulted in a diagnosis of rotator cuff weakness and right shoulder difficulty with physical therapy recommended.  (Tr. 15).  A doctor diagnosed Plaintiff with only mild neuropathy due to diabetes and did not consider his finding a proper basis for disability. (Tr. 15-16).  Moreover, the ALJ noted that doctors found her mental health to be better.  (Tr. 16).  In addition, the ALJ noted that Plaintiff's medication appear to be effective.  (Tr. 16-17).

 Additionally, when making his RFC determination, the ALJ relied upon Plaintiff's activities of daily living.  The ALJ found that Plaintiff's daily activities were inconsistent with the severity of symptoms he alleged and did not support a finding of disability.  (Tr. 17).  In making this determination, the ALJ noted that Plaintiff works part time, she made and sold crafts, and went on a vacation to Texas.  (Tr. 17).

 When making his RFC finding, the ALJ gave no weight to the opinion of Dr. Kollar, claimant's physician because it was inconsistent with Dr. Kollar's earlier notes that found improved concentration and focus, intact memory, and logical thought process.  (Tr. 17).  The ALJ also considered the opinion of Dr. Will who found that Plaintiff had "good to no limits' in performing mental work activities because it was consistent with Plaintiff's reports throughout the record of improvement.  (Tr. 17).  Further, the ALJ considered the opinion of Dr. Fozia Abrar whose opinion was given no weight because it was inconsistent with the medical record.  (Tr.

6

17). The ALJ additionally gave some weight to the opinions of the state non-examining physicians. (Tr. 18).

Finally, while still at the fifth step of the analysis, the ALJ concluded that Plaintiff could not perform her past relevant work as a case aide. (Tr. 18). Next, the ALJ considered whether work incorporating Plaintiff's age, education level, and RFC existed in significant levels in the national economy. (Tr. 18). Here, the ALJ found that Plaintiff was unable to perform the requirements of sedentary work with additional limitations. (Tr. 19). Nevertheless, even considering Plaintiff's additional limitations, the ALJ relied on the testimony of the VE to find that the Plaintiff could obtain work that existed in the national economy including as a bonding machine operator and order clerk. (Tr. 19). Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act.

## II.     STANDARD OF REVIEW

Congress imposed standards for determining whether a claimant is entitled to Social Security disability benefits. There are several benefits programs under the Act, including the DIB Program of Title II (42 U.S.C. §§ 401 et seq.) and the SSI Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 et seq.). Qualified wage earners who become disabled prior to the expiration of their insured status receive benefits under Title II; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, only those who have a disability are eligible for DIB and SSI. See Randolph v. Barnhart, 386 F.3d 835, 836 (8th Cir. 2004).

"Disability" means "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be eligible for benefits, an individual's impairments must be of "such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

Judicial review of the Commissioner's decision to deny disability benefits is constrained to a determination of whether the decision is supported by substantial evidence in the record as a whole. Tellez v. Barnhart, 403 F.3d 953, 956 (8th Cir. 2005). Substantial evidence means more than a scintilla, but less than a preponderance. Slusser v. Astrue, 557 F.3d 923, 925 (8th Cir. 2009). The substantial evidence test requires "more than a mere search of the record for evidence supporting the [Commissioner's] findings." Id. Rather, the court "must take into account whatever in the record fairly detracts from its weight." Id. (quoting Universal Camera Corp. v. Nat'l Labor Relations Bd., 340 U.S. 474. 488 (1951)).

When reviewing the record for substantial evidence, the Court may not reverse the Commissioner's decision simply because substantial evidence exists to support the opposite conclusion. Baker v. Heckler, 730 F.2d 1147, 1150 (8th Cir. 1984). Moreover, the Court may not substitute its own judgment or findings of fact for those of the ALJ. Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).  The court must consider "the weight of the evidence in the record and apply a balancing test to evidence which is contradictory." Dew v. Comm'r of Social Sec., 2010 WL 3033779 at *16 (D. Minn. 2010) (quoting Gavin v. Heckler, 811 F.2d 1195, 1199 (8th Cir. 1987)). After balancing the evidence, if it is possible to reach two inconsistent positions from the evidence and one of those positions represents the Commissioner's decision, the court must affirm the decision. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992). Thus, the

Court will not reverse the ALJ's "denial of benefits so long as the ALJ's decision falls within the 'available zone of choice.'" Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008). The decision of the ALJ "is not outside the 'zone of choice' simply because we might have reached a different conclusion had we been the initial finder of fact." Id.

## III. DISCUSSION

In this case, Plaintiff appears to challenge the ALJ's decision solely on one ground.[2] Plaintiff asserts that the ALJ's RFC decision that Plaintiff could perform other work that exists in the national economy was not based on substantial evidence because the VE's testimony conflicted with the Dictionary of Occupational Titles ("DOT"). (Pl.s Mem., p. 6). Specifically, the Plaintiff contends that the ALJ's RFC limited her work to simple, routine, and repetitive tasks. (Pl.'s Mem., p. 7). However, the jobs the VE stated Plaintiff could perform do not involve simple, routine, and repetitive tasks. (Pl.'s Mem., p. 6). For instance, a "bonding machine operator, DOT #726.685-066" requires a Reasoning Level of 2 which required an ability to deal with detailed instructions and an ability to deal with problems involving variables. (Pl.'s Mem., p. 7)(citing Appendix C, Components of the Definition Trailer, Dictionary of Occupational Titles)). Likewise, the occupation of "order clerk, DOT #209.567.014" requires a Reasoning Level of 3 meaning that the occupation "requires the ability to not only follow instructions that might be presented in multiple formats but also deal with several variables in the work situation." (Pl.'s Mem., p. 8 (citing Appendix C, Components of the Definition Trailer, Dictionary of Occupational Titles)).

Instead, according to the Plaintiff, she can only perform jobs with a Reasoning Development Level of 1 which is described as the ability to:

---

[2] Although somewhat difficult to read, the Court construes the Plaintiff's memorandum as only asserting a claim that the ALJ improperly relied on the VE's testimony. Such a reading is also consistent with the Defendant's understanding of the Plaintiff's submissions.

9

> Apply commonsense understanding to carry out simple one-or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

(Pl.'s Mem., p. 7)(citing Appendix C, Components of the Definition Trailer, Dictionary of Occupational Titles). Therefore, Plaintiff contends, the VE's testimony conflicts with the DOT by concluding that the Plaintiff can perform jobs that the ALJ's RFC prohibits meaning that his testimony does not constitute substantial evidence upon which the ALJ could rely.

"When expert testimony conflicts with the DOT, and the DOT classifications are not rebutted, the DOT controls." Porch v. Chater, 115 F.3d 567, 572 (8th Cir. 1997). However, definitions of particular jobs in the DOT represent approximate, maximum requirements for each position. See Young v. Apfel, 221 F.3d 1065, 1070 (8th Cir. 2000). As such, DOT classifications can be rebutted with VE testimony showing that a particular job might be of a type that the claimant could perform. See Montgomery v. Chater, 69 F.3d 273, 276 (8th Cir. 1995). In fact, "reliance on the DOT as a definitive authority on job requirements is misplaced, however, for DOT definitions are simply generic job descriptions that offer the appropriate maximum requirements for each position rather than their age." Hall v. Chater, 109 F.3d 1255, 1259 (8th Cir. 1997). "The DOT itself cautions that descriptions may not coincide in every respect with the contents of jobs as performed in particular establishments or at certain localities. In other words, not all of the jobs in every category have requirements identical to or as rigorous as those listed in the DOT." Russell v. Astrue, 626 F.Supp.2d 921, 945 (D. Minn. 2009)(citing Hall, 109 F.3d at 1259).

In support of her argument, Plaintiff cites Swope v. Barnhart, 436 F.3d 1023, 1025-26 (8th Cir. 2006), Titus v. Callahan, 133 F.3d 561, 562-63 (8th Cir. 1997), and Lucy v. Chater, 113 F.3d 905, 909 (8th Cir. 1997). However, these cases are distinguishable from the one at hand. In

Lucy, the Court remanded the case because the VE did not consider the Plaintiff's borderline intellectual functioning.  Lucy, 113 F.3d 905 at 908.  Thus, the Plaintiff was "entitled to have a vocational expert consider this condition along with his other impairments to determine how it impacts upon residual functional capacity."  Id. at 909.   The same situation existed in Swope.  See Swope, 436 F.3d at 1024 (reversing the ALJ's determination, where the ALJ's hypothetical to the VE failed to reference the plaintiff's borderline intellectual functioning).  Here, unlike the above cases, there is no evidence that the Plaintiff suffered from borderline intellectual functioning.   In Titus, the Court remanded to the ALJ to consider whether the record supported a finding that the claimant had the mathematical, reasoning, or language skills to perform the duties of the jobs recommended by the VE on a full-time basis.  133 F.3d at 562.  However, the Titus Court did not consider the question presented here, whether the VE's testimony is asserted to conflict with the DOT.  Thus, the Court does not find the reasoning in the cases cited by the Plaintiff to be persuasive.

Instead, this Court concludes that the testimony provided by the VE does not expressly conflict with the DOT, and therefore, constitutes substantial evidence.   One of the jobs that the VE testified the Plaintiff could perform is that of a bonding machine operator, DOT #726.685-066, which requires a Reasoning Level of 2.  A Reasoning Level of 2 requires "commonsense understanding to carry out detailed but uninvolved written or oral instructions.  Deal with problems involving a few concrete variables in or from standardized situations."  (Pl.'s Mem., p. 8 (citing Appendix C, Components of the Definition Trailer, Dictionary of Occupational Titles)).  In this case, the ALJ limited the Plaintiff's work to simple, unskilled work.  The VE formulated his opinion to include only those jobs which he found could be completed within the Plaintiff's RFC even if a position, such as a bonding machine operator, required a reasoning level of two.

Numerous other courts have concluded that an RFC allowing a party to perform simple, routine, and repetitive tasks does not prohibit the performance of jobs requiring a reasoning level of two. See Terry v. Astrue, 580 F.3d 471, 478 (7th Cir. 2009) (RFC for simple work not inconsistent with jobs listed in DOT at reasoning level 3); Lara v. Astrue, 305 Fed.Appx. 324, 326, 2008 WL 4927346, at *1 (9th Cir. Nov. 19, 2008) ("[S]omeone able to perform simple, repetitive tasks is capable of doing work requiring more rigor and sophistication-in other words, Reasoning Level 2 jobs."); Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005)(holding that "level-two reasoning appears more consistent with Plaintiff's RFC" to "simple and routine work tasks"); Money v. Barnhart, 91 Fed.Appx. 210, 215, 2004 WL 362291, at *3 (3rd Cir. 2004)("Working at reasoning level 2 would not contradict the mandate that her work be simple, routine and repetitive").  Thus, the VE's testimony that a bonding machine operator job with a Reasoning Level of 2 could be performed by someone with the Plaintiff's RFC did not conflict with the DOT and constitutes substantial evidence.

In this case, however, the VE went further then the above cited cases when he concluded that the Plaintiff could also perform the job of order clerk, DOT #209.567.014 which requires a Reasoning Level of 3 meaning that the occupation "requires the ability to not only follow instructions that might be presented in multiple formats but also deal with several variables in the work situation."  (Pl.'s Mem., p. 8 (citing Appendix C, Components of the Definition Trailer, Dictionary of Occupational Titles)).  A split of authority exists as to whether a RFC finding a claimant able to perform simple, repetitive tasks can support a conclusion by the VE that a claimant can perform jobs requiring a Reasoning Level of 3.  Compare Stokes v. Astrue, 274 Fed. Appx. 675, 684 (10th Cir. Apr. 18, 2008) (RFC limitation to simple and routine work tasks inconsistent with the demands of level three reasoning) with Terry v. Astrue, 580 F.3d. 471, 478

(7th Cir. 2009) (RFC for simple work not inconsistent with jobs listed in DOT at reasoning level three); Hillier v. Social Security Administration, 486 F.3d 359, 367 (8th Cir. 2007) (holding that an expert's opinion that claimant who was limited to following "simple, concrete instructions" could work as a cashier was not inconsistent with DOT's description of cashier as requiring level three reasoning); Renfrew v. Astrue, 496 F.3d 918, 921 (8th Cir. 2007) (reasoning level three not inconsistent with plaintiff's inability to do complex work).

The weight of authority in this circuit holds, however, that a RFC limiting a claimant to simple, repetitive tasks does not conflict with a finding that a claimant can perform a job requiring a reasoning level of three. Thus, the Court concludes that testimony of the VE that someone with Plaintiff's RFC could perform a job with a Reasoning Level of 3 did not conflict with the DOT and such testimony constitutes substantial evidence properly relied upon by the ALJ.

Even assuming that one could conclude that a job requiring a Reasoning Level of 3 conflicted with the ALJ's RFC limitations, the VE testified that a job existed in substantial numbers in the regional economy that involved only a Reasoning Level of 2. The VE testified that Plaintiff could perform the job of bonding machine operator, DOT #726.685-066, of which 1,300 jobs exist in the state of Minnesota. (Tr. 49). Therefore, even assuming only for the sake of argument that the order clerk job was found to be inconsistent with the DOT, the Plaintiff would still be able to perform another job existing in significant numbers in the regional economy. See Hall v. Chater, 109 F.3d 1255, 1259-60 (8th Cir. 1997) (less than 400 jobs were a significant number); Jenkins v. Bowen, 861 F.2d 1083, 1087 (8th Cir. 1988) (finding that in certain circumstances, 500 jobs constitutes a significant number of jobs in the region in which the Plaintiff lived); Barker v. Sec. of Health & Human Servs., 882 F.2d 1474, 1479 (9th Cir.

1989) (concluding 1,266 jobs constituted a significant number); Trimiar v. Sullivan, 966 F.2d 1326, 1330-32 (10th Cir. 1992) (finding that 850-1,000 jobs is a significant number); Slavicek v. Astrue, 2010 WL 5421444, at *21 (D. Minn. Dec. 2, 2010) (determining that 500 jobs in the state of Minnesota constitutes a significant number).

As such, the Court concludes that the VE's testimony constitutes substantial evidence upon which the ALJ properly relied. The ALJ's decision that Plaintiff could perform other work existing in the national economy is supported by substantial evidence. Consequently, the Court recommends that the Plaintiff's motion for summary judgment be denied and that the Defendant's motion for summary judgment be granted.

## VI. CONCLUSION

**IT IS HEREBY RECOMMENDED THAT:**

1. Defendant's Motion for Summary Judgment (Doc. No. 22) be GRANTED and Plaintiff's Motion for Summary Judgment (Doc. No. 14) be DENIED.

Dated: November 29, 2011                         s/Leo I. Brisbois

                                                 Leo I. Brisbois
                                                 U.S. MAGISTRATE JUDGE

**N O T I C E**

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by December 13, 2011**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for

in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.